In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2628

CURTIS K. HALL,

*Plaintiff-Appellant,*

*v.*

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-938 — **Marvin E. Aspen**, *Judge.*

ARGUED OCTOBER 2, 2018 — DECIDED OCTOBER 15, 2018

Before BAUER, KANNE, and SCUDDER, *Circuit Judges.*

PER CURIAM. While loading chemicals onto a truck, Curtis Hall felt a sharp pain in his back. This back pain formed the basis of his application for disability insurance benefits. An administrative law judge denied his application, and a district court upheld that determination. On appeal, Hall contends that the ALJ improperly discounted his treating physician's

opinion and discredited his own testimony. Because substantial evidence supports the ALJ's decision, we affirm.

**I**

Hall, a tanker loader at a chemical company, was hooking a hose underneath a tanker truck in mid-2006 when he felt pain in his low back. His pain persisted so he saw Dr. George Miz, an orthopedic surgeon, who ordered an MRI of Hall's lumbar spine. After reviewing the MRI, Dr. Miz found that Hall had a large disc herniation at L-5 that was pinching a spinal nerve root. Dr. Miz recommended "conservative treatment," so Hall began physical therapy while continuing to work, and he reported progress from the therapy. As of November 2006, Hall was still experiencing "ups and downs" in terms of pain, and by December, Dr. Miz thought that any improvement Hall felt with his back had "essentially plateaued." Because the pain persisted, Hall and Dr. Miz began planning a lumbar microdiscectomy to relieve the pressure on his spinal nerve root.

In March 2007, Hall stopped working and underwent the operation. The surgery was successful. Hall's back improved, and by June his range of motion during physical therapy had increased. He reassured Dr. Miz the next month that he had "slow but steady progress with physical therapy." By December, after an epidural steroid injection, Hall reported that his pain was "down to 2 to 3/10."

Meanwhile, since the day of his surgery, Hall has received temporary total worker's compensation benefits. The record shows that Hall continues to receive these benefits to this day.

In 2008, Hall's functionality continued to improve. In June he said that he could sit, stand, and walk for about an hour.

Dr. Miz referred him to a physical therapist later that summer for a functional capacity evaluation, and a therapist administered a battery of tests before finding that Hall could return to work at the "light" level (meaning that he could lift 20 pounds infrequently, 10 pounds frequently, and carry 10 pounds or more). The tests also showed that Hall could sit for 15–20 minutes and stand for 30 minutes. The following month, Dr. Miz said that Hall could work within the parameters of the functional capacity evaluation, though Hall did not return to work.

In September 2010, Dr. Hutchinson, an orthopedist at the University of Illinois at Chicago Medical Center, reviewed Hall's records and examined him in connection with his worker's compensation case. Dr. Hutchinson agreed with Dr. Miz that Hall could work at the "light" level, consistent with the results of the 2008 functional capacity evaluation. Dr. Hutchinson opined that Hall had a protruding disc, but that Hall could continue to work.

One month later, in October 2010, a CT scan confirmed Dr. Hutchinson's opinion that Hall's disc was still protruding. Shortly thereafter, Dr. Miz performed a lumbar discography, a diagnostic procedure to determine if one or more discs was the cause of Hall's back pain. Based on the results of the discography, Dr. Miz concluded that the L5-S1 area was causing Hall's pain. In February 2011, Dr. Miz recommended that Hall undergo a "transforaminal interbody fusion" to stabilize his spine.

Put off by the prospect of another surgery, Hall heeded the recommendation of his internist and turned for a second opinion to a neurosurgeon, Dr. Martin Luken. In June 2011, Dr. Luken recommended that Hall undergo a foraminotomy,

a minimally invasive surgery to remove whatever was compressing his nerve root. Meanwhile, Dr. Luken proposed (without elaboration) that Hall be "off work."

A few months later a state-agency physiatrist consultant, Dr. Barbara Heller, examined Hall and opined that he had persistent L5-S1 discogenic disease with persistent right L5-S1 radiculopathy. But because Hall's pain medications were working well, she determined that he could return to light work consistent with the functional capacity evaluation from 2008.

In 2012, Hall applied for disability insurance benefits based on his continued back pain. He alleged an onset date of March 7, 2007—the day of his surgery—and a date last insured of December 31, 2012.

In September 2013, almost a year after Hall's date last insured, Dr. Luken performed the foraminotomy, and within days Hall reported "substantial relief." According to Dr. Luken, Hall's progress over the next few months was "generally very encouraging." In November, Hall told Dr. Luken that his pain had "slowly but steadily improved," and that he was confident that it was less severe than before the surgery. The next month, Hall reported being "steadily more comfortable," so Dr. Luken released him back to work at the "strictly sedentary" level. In February 2014, Hall told Dr. Luken that he was still getting "slowly better," so Dr. Luken released him to work at "light or medium duty."

In 2014, Hall appeared at a hearing before an administrative law judge. He testified that before his date last insured he could not bend or lift anything, but that he could exercise for an hour on the bike or treadmill, do laundry, mow grass, and

take short walks. Hall also testified that to manage his pain, he had recently started taking Norco, a narcotic that affected his concentration.

Applying the familiar five-step analysis, see 20 C.F.R. § 404.1520(a), the ALJ denied disability insurance benefits. The ALJ determined that Hall had not been engaged in substantial gainful activity since his alleged onset date (step one); that his degenerative disc disease with radiculopathy was severe (step two); and that his impairment did not meet or medically equal a listing (step three).

The ALJ then considered Hall's residual functional capacity and decided that Hall could perform light work, with caveats not relevant here except that Hall could alternate between sitting and standing as needed. In evaluating Hall's RFC, the ALJ concluded that Hall's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not fully credible" because there was evidence that Hall exaggerated his symptoms. The ALJ gave Dr. Luken's opinions "little weight" because they were generally inconsistent with the other doctors' opinions and appeared to rely too heavily on Hall's self-reported symptoms. After finding that Hall could not perform any past relevant work (step four), the ALJ credited the vocational expert's testimony that Hall could work as an assembler, screener, or an information clerk (step five). The Appeals Council denied Hall's request for review.

Hall sought judicial review of the Commissioner's decision, and the district court granted the Commissioner's motion for summary judgment. The court agreed with the ALJ's decision not to give controlling weight to Dr. Luken's opinion primarily because his opinion was inconsistent with the weight of other medical evidence in the record. The court

found insufficient the ALJ's consideration of some factors set forth in 20 C.F.R. § 404.1527(c) (the "treating-physician rule"), but deemed any error harmless because of substantial evidence that "heavily" undermined Dr. Luken's opinion—in particular, the absence of details in Dr. Luken's treatment notes, his unfamiliarity with Hall's previous functional capacity evaluation, and contradictory opinions expressed by other doctors (Miz, Hutchinson, and Heller). The district court also determined that the ALJ adequately substantiated his conclusion that Hall was "not fully credible" by explaining that the objective evidence did not support Hall's reports about the severity of his symptoms.

## II

On appeal Hall challenges the ALJ's application of the treating-physician rule to Dr. Luken's opinion. Under the rule, which (although now repealed) applies to Hall's claim based upon it being filed before March 27, 2017, a treating doctor's opinion generally is entitled to controlling weight if it is consistent with the record. See 20 C.F.R. § 404.1527(c)(2). Hall primarily contends that the ALJ wrongly discounted Dr. Luken's opinion based on his finding that the opinion was inconsistent with the record.

We disagree. The record shows that Dr. Luken's opinion was at odds with the other doctors' opinions. For example, while Dr. Luken said that Hall should be "off work" in March and June 2011, Drs. Miz, Heller, and Hutchinson had contemporaneous, conflicting, and fully reasoned opinions that Hall could continue to work. Indeed, once Hall's back worsened in 2010, to the point at which Dr. Miz recommended a spinal fusion surgery, Dr. Miz nonetheless reaffirmed that Hall could still work within the parameters of the functional capacity

evaluation done by the physical therapist in 2008. And after thoroughly reviewing Hall's medical records and conducting physical examinations, Drs. Hutchinson and Heller agreed with Dr. Miz that Hall could work at the "light" level. Those doctors all based their opinions on relevant objective evidence that Dr. Luken did not have access to—the 2008 functional capacity evaluation—and the ALJ was entitled to credit their opinions over Dr. Luken's.

To be sure, Hall is right with two of his observations regarding Dr. Luken. First, we agree with Hall that the ALJ inappropriately commented that Dr. Luken's opinions "seem to contain a level of sympathy." If the ALJ somehow found it necessary to offer such a view, he needed to root the observation in specific record evidence—for example, an express statement in a physician's treatment notes. See 20 C.F.R. § 404.1527(c)(2). That did not happen. Instead, the ALJ broadly speculated—with no citation to any portion of the record—that Dr. Luken's opinions "seem[ed] to contain a level of sympathy as they are not supported by the overall evidence." We discourage such stray, unsupported conjecture.

Second, we agree with Hall that the ALJ should not have discounted Dr. Luken's opinion because the doctor was referred by Hall's internist and was therefore "essentially one of the claimant's choosing." Hall went to see his internist about his back pain, and the internist reasonably referred Hall to a neurosurgeon rather than attempt back surgery himself. We see no reason for Hall, who was in pain, to avoid his doctor's recommendation to see a neurosurgeon who was qualified to treat his back. We fail to understand why Dr. Luken's credibility was called into question because Hall decided to follow-through with the referral.

These two deficiencies in the ALJ's reasoning do not undermine the ALJ's broader conclusion that Dr. Luken's opinions were inconsistent with the opinions from other doctors. Furthermore, the opinions lacked detail and did not show that he knew of the functional capacity evaluation from 2008. Put differently, we cannot say that the ALJ's other misplaced reasons for discounting Dr. Luken make the ALJ's overarching credibility determination "patently wrong." *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010).

We turn now to Hall's argument that the ALJ improperly discounted his own testimony without giving adequate reasons, thereby violating a regulation requiring ALJs to give specific reasons for credibility determinations that are supported by the evidence, see SSR 96-7p. But the ALJ's credibility determination here was not "patently wrong" because the ALJ found Hall "not fully credible" for many specific reasons supported by the evidence. See *Schaaf*, 602 F.3d at 875.

Foremost, Hall's presentation of symptoms was inconsistent. Though multiple doctors (including Dr. Luken) found that Hall had a normal gait and range of motion, his physical therapist expressly stated that Hall "exaggerated" the severity of his pain while moving and that he was "self-limiting." In addition, Hall's testimony about his limitations was inconsistent: he said that he could exercise for an hour, mow grass, drive, prepare meals, clean, shop, and do laundry, but he simultaneously insisted that he could not bend or lift anything. And finally, though Hall testified that pain medication (Suboxone) would "wipe him out" physically, he seemed to use it successfully at the time, as he reported no side effects to his doctor.

Hall's final two arguments are underdeveloped. First, in a cursory discussion, Hall asserts that the ALJ erred in assessing his RFC by omitting his level of pain, his need to shift regularly from sitting to standing, and his need for narcotic medication. His argument is "perfunctory and undeveloped," and therefore waived. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). In any event, the ALJ's RFC determination did include Hall's need to change position, as it allowed him to "alternate [between sitting and standing] as needed." The ALJ considered Hall's allegations of pain when he evaluated Hall's testimony before finding that Hall was "not fully credible." And Hall himself testified that he began taking narcotics after his date last insured.

In another undeveloped argument, Hall contends that the ALJ did not consider unspecified "medical and testimonial facts of record" showing that he met Listing 1.04A regarding spine diseases. That listing, however, requires that a claimant also have a condition beyond degenerative disk disease:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. § Pt. 404, Subpt. P, App. 1. Though doctors opined that Hall had nerve root compression, he has not pointed to any finding by a medical professional that he had a "limitation of motion of the spine," and "motor loss" "accompanied by sensory or reflex loss." To the contrary,

several doctors found that Hall had a normal gait and range of motion. Hall had the burden of proof to show that he met the listing, see *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005), and he failed to meet it.

We AFFIRM the district court's judgment upholding the denial of benefits.