NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 30, 2020
Decided February 21, 2020

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 19-1860

| | |
|---|---|
| CHONGNENGWT VANG, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 18-C-277 |
| ANDREW M. SAUL, Commissioner of Social Security *Defendant-Appellee.* | Lynn Adelman, *Judge.* |

**O R D E R**

Chongnengwt Vang applied for Disability Insurance Benefits based on a variety of health problems, including diabetes, hepatitis, and carpal tunnel syndrome. An administrative law judge denied his application on the ground that, despite these impairments, Vang could still perform a range of light work. On appeal, Vang argues that the ALJ should have given his doctor's opinion controlling weight, that the ALJ's residual functional capacity assessment was not supported by substantial evidence, and that the ALJ failed to consider his excellent work history when evaluating his subjective complaints. None of these challenges is persuasive, so we uphold the ALJ's ruling.

Vang, a former preschool teacher now in his mid-fifties, applied for benefits in 2014, alleging a disability onset date in August 2013. Up until that time he had been struggling with diabetes, hepatitis B, and carpal tunnel. He was first diagnosed with moderate-to-severe carpal tunnel in both hands in 2009, following a nerve-conduction study. In 2012, he was diagnosed with hepatitis B and type 2 diabetes.

In his application for benefits, he alleged that his hepatitis and diabetes conditions caused lower-back and leg pain, which interfered with his ability to dress and bathe, limited him from sitting or standing for long, and prevented him from lifting more than 15 pounds. He also stated that he had chest pain, migraines, and carpal tunnel in both hands. The carpal tunnel left his hands feeling numb, interfered with his ability to use his hands, and required him to wear supportive wrist braces at night. He added that he needed a cane for walking and was losing his vision.

In April 2014, Vang saw Dr. Jeremias Vinluan, his primary care physician, and reported pain in his lower back. No diagnosis appears to have been made about the source of this pain. Dr. Vinluan referred Vang to physical therapy and chiropractic treatment. At therapy, Vang reported that he had experienced lower back pain for several years and that the pain worsened when his blood sugar levels increased, when he climbed stairs, or when he sat or stood longer than 10 minutes. He also said that he used a cane for his back pain.

In April 2015, Vang returned to Dr. Vinluan for blood work, reported continuing back pain, and mentioned for the first time that he was experiencing knee pain. In connection with Vang's application for benefits, Dr. Vinluan completed a functional capacity report, opining that Vang could, in an eight-hour workday, stand and walk for less than one hour and sit for less than one hour; could never carry more than 20 pounds, only occasionally carry up to 20 pounds, and frequently carry less than 10 pounds; could not use his right hand for repetitive grasping or fine manipulation; and could rarely squat, crawl, or push/pull. At a checkup in June, Dr. Vinluan noted that Vang had diabetes mellitus, diabetic neuropathy, GERD, and hepatitis. Dr. Vinluan did not specify the basis for his diagnosis of diabetic neuropathy.

Dr. Vinluan's treatment notes from September and November 2015 make no mention of Vang's back pain, knee pain, or neuropathy. Notes from Vang's appointments in the spring and summer of 2016 mention neuropathy but do not detail symptoms or treatment.

In December 2016, Dr. Vinluan responded to Vang's complaints of knee pain and weakness and prescribed a knee brace. Treatment notes reflect that Vang reported knee pain as measuring 7 out of 10. The following month, Dr. Vinluan drafted a letter in support of Vang's application and stated that he was treating him for hypertension and type 2 diabetes. Dr. Vinluan also stated that Vang had diabetic neuropathy in both legs and needed knee braces for support and balance.

The agency denied Vang's application initially and again on reconsideration.

At a hearing before an ALJ in 2017, Vang testified that he had previously worked as a preschool teacher, a job that required him to be on his feet most of the day and to lift children. He said he stopped working in 2013 because he had passed out four or five times while at work—episodes that a school nurse attributed to low blood sugar. The school assigned him to office work, but even this job was untenable because he could not sit for extended periods. He now spends most of the day sitting and lying down, uses a cane and knee brace to walk, and sometimes needs help from his family to get out of bed. He reported problems with his right hand and explained that he could not hold a pencil or spoon. Finally, Vang's wife testified that he had fallen on numerous occasions, including four times in the previous month alone, and that these falls typically resulted in visits to the hospital.

A vocational expert testified that a person with Vang's background who was limited to light work, needed to use a cane for ambulation and standing, needed to avoid exposure to unprotected heights, and could only occasionally handle or finger with the right dominant hand, would be unable to perform Vang's past work as a preschool teacher. He could, however, obtain work as an information clerk, furniture rental consultant, or usher.

The ALJ concluded that Vang was not disabled. Applying the familiar five-step analysis, *see* 20 C.F.R. § 404.1520(a), the ALJ found that Vang did not engage in substantial gainful activity (step 1), and that he suffered from the severe impairments of diabetes mellitus, hepatitis B, neuropathy, and carpel tunnel syndrome (step 2). The ALJ then determined that Vang's impairments did not meet the severity of a listed impairment (step 3), and that he had the RFC to perform light work with certain limitations (no climbing of ladders, ropes, or scaffolds; occasional climbing of stairs; occasional balancing, kneeling, and crawling; no exposure to heights or moving machinery; occasional handling and fingering; and allowance to use a cane to ambulate). At step 4, the ALJ determined that Vang could not perform his past work as

a preschool teacher. At step 5, the ALJ concluded that Vang could perform other jobs identified by the VE, including usher, information clerk, and furniture rental consultant.

The Appeals Council denied review, making the ALJ's decision final. *See* 20 C.F.R. § 404.981.

The district court affirmed, concluding that the ALJ properly afforded little weight to Dr. Vinluan's unsupported opinions and that substantial evidence supported the ALJ's determination that Vang could perform light work.

On appeal, Vang first argues that the ALJ erred by affording only partial weight to Dr. Vinluan's opinions, which Vang believes are well-supported by the medical evidence and consistent with the record. In claims like this that were filed before 2017, a treating source's opinion is entitled to controlling weight if it is supported by sound medical evidence and a consistent record. *See* 20 C.F.R. § 404.1527(c)(2); *Hall v. Berryhill*, 906 F.3d 640, 643 (7th Cir. 2018). When an ALJ does not give a treating source's opinion controlling weight, then that opinion should be weighed based on the nature and extent of the treatment, the treating source's area of specialty, and the degree to which the opinion is consistent with the record and supported by evidence. *See* 20 C.F.R. § 404.1527(c); *Hall*, 906 F.3d at 644.

The ALJ's decision to afford only partial weight to Dr. Vinluan's opinions was appropriate. He described at length how Dr. Vinluan's opinions were conclusory or unsupported. He first noted that Dr. Vinluan's statement that Vang required knee braces was unsupported by an electrodiagnostic evaluation, test results, or examination findings. Dr. Vinluan also diagnosed Vang with diabetic neuropathy, but he did not describe how he reached that diagnosis, if he performed any tests, or how severe the symptoms were. The ALJ further noted that the record did not contain any objective findings tracing Vang's diabetes or hepatitis to his back and knee problems. An ALJ may give less weight to an opinion that is unsupported by objective evidence. *See Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010); 20 C.F.R. § 404.1527(c)(3). "And if the presence of objective indicators … makes a claim more plausible, their absence makes it less so." *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010). Without objective medical evidence that explains or supports many of Dr. Vinluan's diagnoses, the ALJ did not err in affording partial weight to his opinions.

Vang next argues that the ALJ's RFC is not supported by substantial evidence. He contends that because the ALJ rejected his treating physician's opinion and did not

otherwise rely on the opinions of the state agency consultants, the ALJ created an "evidentiary deficit" that in no way supports an RFC determination that he could perform light work.

True, the ALJ did *not* point to evidence that Vang could perform light work. The ALJ did, however, weigh the evidence and conclude that the record did not support a determination that Vang could not work. Ultimately, it was Vang's burden, not the ALJ's, to prove that he was disabled. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). An ALJ adequately supports his RFC determination when he "consider[s] all limitations supported by [the] record evidence" and "tie[s] the record evidence to the limitations included in the RFC finding." *See Jozefyk v. Berryhill*, 923 F.3d 492, 497–98 (7th Cir. 2019). Based on the rather limited evidence he had before him, the ALJ fashioned an appropriate RFC. And as discussed later, the ALJ adequately justified his decision not to fully credit Vang's subjective complaints. We thus conclude the RFC was supported by substantial evidence.

Vang next argues, for the first time, that the ALJ committed three reversible errors that resulted in the RFC diverging from the hypothetical posed to the VE. But by not raising these contentions in the district court, he has forfeited them. *See Sansone v. Brennan*, 917 F.3d 975, 983 (7th Cir. 2019). Regardless of forfeiture, however, Vang's arguments are meritless. First, Vang contends that the hypothetical "diverged" from the RFC because the RFC omitted the limitation that he would need his cane for both standing and ambulating. True, a hypothetical posed to the VE must incorporate all of the claimant's limitations supported by the medical record. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). But the ALJ here made no error because he posed a hypothetical with a more restrictive limitation (about jobs available for people who need a cane to *both* stand and ambulate) than what was supported by the medical record.

Second, Vang argues that the ALJ improperly modified the "no exposure to heights" restriction in the RFC by asking the VE to consider a hypothetical limitation of no exposure to *unprotected* heights. But this argument is "nothing more than a dislike of the ALJ's phraseology." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). Vang makes no argument to suggest why the word "unprotected" makes any difference in a VE's consideration.

Third, Vang faults the ALJ for recasting the limitation in the RFC ("occasional handling and fingering") as something narrower in the hypothetical (occasionally being able to handle and finger with the right dominant hand). But even if this modification

were assumed to be an error, any error was harmless. *See Jozefyk*, 923 F.3d at 498; *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). The medical record does not support a limitation for occasional handling with both hands, so "there are no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand." *Jozefyk*, 923 F.3d at 498. Vang testified that he experienced problems with only his right hand and that his left hand was otherwise "strong." The ALJ later asked the VE about jobs available to individuals who could only occasionally finger and handle objects with their right dominant hand. Finally, the ALJ explained that there was no evidence in the record that Vang required a brace for either hand, that he could not hold a spoon or pencil with his right hand, or that he even received any treatment for his reported limitations. Thus, any potential error was harmless.

Moving on, Vang next contends—also for the first time—that his favorable, twenty-five-year work history has earned him "substantial credibility" for any evaluation of his asserted limitations. Forfeiture notwithstanding, this court will not overturn an ALJ's credibility determination unless it was "patently wrong," *see Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015), and a consistent work history is just one factor for an ALJ to consider. *See Summers*, 864 F.3d 528–29. The ALJ gave several reasons for finding Vang's testimony not credible: He discounted Vang's allegations that he could not hold a spoon or pencil because Vang never received treatment for carpal tunnel, and he discounted Vang's allegation of hepatitis-related back and leg pain because the record showed that Vang's hepatitis was controlled by medication. Vang has not shown that the ALJ's credibility determination was patently wrong.

Finally, Vang fleetingly mentions other perceived issues in his brief, but they are underdeveloped or lack any citations to authority. "Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency*, 845 F.3d 313, 321 (7th Cir. 2017).

AFFIRMED