NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 18, 2020
Decided December 1, 2020

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 20-1035

| | |
|---|---|
| KEVIN THOMAS LACHER, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 18-CV-941 |
| | |
| ANDREW M. SAUL, | Nancy Joseph, |
| Commissioner of Social Security, | *Magistrate Judge*. |
| *Defendant-Appellee*. | |

**ORDER**

Kevin Lacher, a 55-year-old man suffering from sustained back pain and limited mobility, challenges the denial of his application for disability insurance benefits. An administrative law judge found that Lacher had the residual functional capacity to perform sedentary work with some limitations. On appeal, Lacher contends that the ALJ erred by (1) not assigning enough weight to his treating physician's opinion and (2) discounting his subjective complaints. Because substantial evidence supports the ALJ's determination that Lacher was not disabled, we affirm.

Lacher filed for disability benefits in early 2015, asserting that his pathological back fractures, degenerative lumbar-spine disc disease, left-side joint dysfunction, and high blood pressure prevented him from working. He traced these conditions back to 2008, when he fractured his spine lifting a window for a home-improvement company. Before that, Lacher had served in the Air Force as a heavy-equipment mechanic.

A surgery that Lacher underwent in 2010 to repair a torn disk appeared to alleviate his symptoms. He stayed out of the workforce until late 2013, when he began working for a laptop-recycling company. But in January 2014, Lacher complained of back pain to his primary-care physician, Dr. Paul Robey, who subsequently discovered a compression fracture. Lacher underwent another back surgery in March.

After this surgery, Lacher still experienced back pain. In October, an orthopedic specialist diagnosed him with a second compression fracture in his spine. Another surgery was scheduled but then cancelled because the fracture was considered too small. Lacher soon began therapy with a chiropractor, and his condition improved to the point where he could shovel snow. An MRI and bone scan from this time showed that the fracture had healed. At a post-therapy checkup in mid-2015, the chiropractor noted that Lacher had minimal to mild muscle spasms and restricted mobility in his problem areas but no longer had significant flare-ups of pain.

Based on his back pain and restricted mobility, Lacher applied for disability insurance benefits. He claimed a disability onset date of February 13, 2014—the same day he was laid off from his job dismantling laptops for recycling. Lacher stated that he could not sit or stand for more than 20 minutes, walk more than a block without a cane, lift more than 20 pounds, or bend to pick up something off the floor. He also reported waking up every two hours from pain, for which he was prescribed Valium.

In support of Lacher's application, Dr. Robey submitted a "Treating Source Statement" opining on Lacher's ability to perform work-related activities. On one form, he checked a box indicating that Lacher likely would be off task at work for over 25% of the time and absent more than 4 days a month. Dr. Robey also noted that Lacher had limitations such as lifting and carrying objects weighing at least 10 pounds (which he could do only occasionally); lifting 20 pounds (rarely); stooping, balancing, kneeling, and crouching (only occasionally); and never climbing stairs, ramps, ladders, or scaffolds.

The Social Security Administration denied Lacher's application initially and on reconsideration, and an ALJ held a hearing on his disability claim. At the hearing, Lacher emphasized that, as of 2015, he could not bend down (such as to put on his socks or pick up after the dog) or sit for more than 30 to 45 minutes without taking a break.

He added that he could walk only about 50 yards before needing to stop, and that he used a cane. Lacher also described days on which the burning back pain was so severe that he could do nothing but find a comfortable position and lie down.

The ALJ then questioned a vocational expert about the jobs available to someone with Lacher's limitations. The vocational expert noted at the outset that Lacher had worked in the past as a laptop recycler—medium, unskilled work—but he actually had been performing the work at only a sedentary level. The expert went on to testify that a person with Lacher's limited mobility could not perform his past recycling work if he needed to take a break every thirty minutes, but he could do the job as Lacher had actually performed it in the past.

Applying the agency's familiar five-step analysis, *see* 20 C.F.R. § 404.1520(a), the ALJ determined that Lacher was not disabled at any time between February 2014 (the alleged onset date) and September 2015 (the date last insured). The ALJ found that Lacher had not engaged in substantial gainful activity since the alleged onset date (step one); that he had the severe impairment of a history of compression fractures (step two); that he did not have an impairment or combination of impairments that met or equaled a listed impairment (step three); that he had the residual functional capacity to perform a range of sedentary work as defined in 20 C.F.R. § 404.1567(a) (step four); and that he could perform his past recycling work (also step four).

In reaching her conclusion, the ALJ explained that she found Lacher's testimony about the intensity, persistence, and limiting effects of his symptoms "not entirely consistent" with the medical evidence—evidence that he had improved mobility post-therapy and that his fractures were healing. The ALJ gave some weight to Dr. Robey's opinion, noting that portions of it were consistent with evidence that Lacher had tenderness and a limited range of motion in his back, but other portions were inconsistent with evidence showing normal gait, normal muscle strength, and the absence of any limping.

The Appeals Council denied review, making the ALJ's decision final. *See* 20 C.F.R. § 404.981. The district court upheld the ALJ's decision as supported by substantial evidence.

On appeal, Lacher argues—with respect to the residual functional capacity finding—that the ALJ erred by giving only "some weight" to the opinion of his treating physician Dr. Robey. For applications like Lacher's that were filed before 2017, a treating source's opinion is entitled to controlling weight if it is supported by sound medical evidence and a consistent record. 20 C.F.R. § 404.1527(c)(2); *Hall v. Berryhill*, 906 F.3d 640, 643 (7th Cir. 2018). When an ALJ does not give controlling weight to a

treating source's opinion, that opinion should be weighed based on the nature and extent of the treatment, the treating source's area of specialty, and the degree to which the opinion is consistent with the record and supported by evidence. *See* 20 C.F.R. § 404.1527(c)(2). Lacher disputes the determination that Dr. Robey's "Treating Source Statement" was inconsistent with the medical record, emphasizing the doctor's February 2015 comment that his back pain likely would not improve and that he likely would have more compression fractures over time.

Substantial evidence supports the ALJ's decision to give only "some weight" to Dr. Robey's opinion. The ALJ adequately explained why she found that Dr. Robey's treating-physician form painted a more severe picture of Lacher's limitations than suggested by the objective medical evidence. She properly assessed the limitations in Dr. Robey's form, noting inconsistencies between the severe limitations identified by the doctor and physical examinations showing that Lacher had normal gait, muscle strength, and range of motion in his extremities. As the ALJ also pointed out, Dr. Robey attributed Lacher's limitations to his diagnosed compression fractures without explaining how the fractures restricted his mobility so severely. Although the ALJ could have substantiated her analysis better—for instance, by specifying the portions of Dr. Robey's form she discredited—she did acknowledge Dr. Robey's familiarity with Lacher's condition, directly adopted some of his proposed limitations, and otherwise applied the correct legal standards.

Lacher next faults the ALJ for discounting his subjective complaints as "not entirely consistent" with the evidence—a formulation akin to one ("not entirely credible") that we have identified as "meaningless boilerplate." *Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir. 2010). Specifically, he argues that the ALJ ignored his April 2015 statement that he "cannot sit, stand more than 20 minutes."

But the phrase "not entirely credible" (or "not entirely consistent") is meaningless only when the ALJ gives no legitimate reasons for discrediting the claimant's testimony. *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011). The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his subjective symptoms. The ALJ acknowledged Lacher's physical limitations caused by the compression fractures, but pointed to his "normal reflexes, sensation, muscle strength, and gait"; his "reported improvement with chiropractic care"; and his "increased ability in performing some activities of daily living"—including shoveling snow with less pain. True, the ALJ said nothing about Lacher's self-reported inability to sit for prolonged periods, but Lacher has not identified any objective medical evidence in the record to corroborate such a generalized subjective complaint. Given how little Lacher said about

any limitations he had while sitting, the ALJ cannot be faulted for not explicitly addressing this complaint. *See Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (internal citations omitted).

AFFIRMED