NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 26, 2021[*]
Decided February 10, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 20-1691

| | |
|---|---|
| MICHAEL A. SCHRANK, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 19-CV-763 |
| ANDREW M. SAUL, Commissioner of Social Security, *Defendant-Appellee.* | Nancy Joseph, *Magistrate Judge.* |

**O R D E R**

Michael Schrank challenges the denial of his application for disability insurance benefits. An administrative law judge found him not disabled, and the district court concluded that substantial evidence supported the ALJ's decision. Schrank raises one primary issue on appeal: Whether the ALJ erred by discrediting his complaints about

---

[*] We previously granted the parties' joint motion to waive oral argument. Thus, this appeal was submitted on the briefs and the record. FED. R. APP. P. 34(f).

the limiting effects of his symptoms. She did not, and substantial evidence supports the decision, so we affirm.

Schrank, now 51, worked full time as a truck driver for many years until 2007, when his habit of falling asleep on the job triggered his reassignment to the position of dispatcher and eventually his discharge. He found work as a forklift driver but lost that job too for the same reason. Schrank stopped working in February 2008, the alleged onset date of his disability, and applied for disability insurance benefits and supplemental security income based on his problems with sleep apnea, obesity, asthma, and high blood pressure.

In 2006, Schrank first visited a sleep specialist, Dr. Don Harden, for complaints of daytime fatigue. Dr. Harden performed a sleep study, diagnosed obstructive apnea, and noted that Schrank responded well to use of CPAP and BiPAP machines. CPAP (continuous positive airway pressure) and BiPAP (bi-level positive airway pressure) machines are ventilator masks worn during sleep to mitigate the effects of apnea by opening the airways and controlling oxygen flow. Dr. Harden loaned Schrank a CPAP for home use, but by late 2007 he no longer was using it. Schrank had "significant mask intolerance" to the machine and by mid-2008 reported using it only sparingly.

Schrank also brought his sleep issues to the attention of his primary-care physician, Dr. Andrew Brayer. In September 2008, Dr. Brayer recorded that Schrank would fall asleep easily "if he is in a quiet position and not doing much."

Meanwhile, two agency physicians reviewed Schrank's records in connection with his application and assessed his functional limitations. In April 2008, Dr. Syd Foster opined that Schrank was unlimited in his capacity to work, though he needed to avoid exposure to hazards such as machinery and heights. Dr. Foster explained that, although Schrank had daytime somnolence, he could care for himself and his daughter, and even drive a car so long as he was accompanied. Five months later, Dr. Michael Baumblatt reviewed updated medical records and opined that Schrank could work with certain exertional limitations (i.e., lift 50 pounds only occasionally) and environmental limitations (i.e., avoid exposure to fumes and hazards).

At a hearing before an ALJ in 2010, Schrank testified about the extent of his problems falling asleep during the day. He described falling asleep erratically, usually at least once every couple of hours. He held a commercial driver's license and

continued to drive his personal vehicle, a practice that no doctor suggested he stop. His father also testified about Schrank's difficulties staying awake.

Later that year, an ALJ first denied Schrank's application for benefits, concluding that he had the residual functional capacity to perform a wide range of unskilled work that did not involve exposure to certain hazards. But on appeal, the district court concluded that the ALJ ignored Schrank's testimony about daytime somnolence and remanded the case for further proceedings.

Meanwhile, also in 2010, Schrank consulted with an otolaryngologist, Dr. Christopher Long, about surgical options to open his nasal passages and relieve his apnea. Dr. Long recorded that Schrank could not tolerate the CPAP mask and had "refused desensitization therapy" that would help him tolerate it. Dr. Long performed the surgery in April. At follow-up appointments, he observed that Schrank was healing well. Still, based on the results of another sleep study performed by Dr. Harden, Schrank's condition remained unresolved, and he needed a CPAP or BiPAP device to relieve his apnea. But shortly after, Schrank stopped using his CPAP because of discomfort. Dr. Long recommended using a different type of mask or contacting a company about a fitting.

In 2012, the ALJ denied Schrank's application a second time. The decision again was remanded, this time by the Appeals Council, which, as relevant here, faulted the ALJ for discrediting Schrank's testimony without considering his supporting evidence, such as testimony from Schrank's father corroborating his problems falling asleep.

On remand, another ALJ presided at the hearing. Schrank first testified that he napped one to three times a day and that he still had a driver's license, cooked, and helped with chores. Schrank's attorney testified that Schrank had fallen asleep every time they met about the case (about 10 to 12 meetings over five years). The ALJ then asked a vocational expert whether competitive work existed for someone who could perform medium work with a host of limitations not at issue here. The expert said there was an ample number of jobs available in the national economy for such a person.

The ALJ again concluded that Schrank was not disabled. Applying the five-step analysis, *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), the ALJ determined that (Step 1) Schrank had not engaged in substantial gainful activity during the relevant time period; (Step 2) his sleep apnea, obesity, and asthma were severe impairments; (Step 3) none of those impairments equaled a listed impairment; (Step 4) he retained the residual

functional capacity to perform medium work with the limitations proffered to the vocational expert; and (Step 5) although Schrank could not perform any past relevant work, he could do other jobs in the national economy.

In reaching this conclusion, the ALJ explained that she found Schrank's testimony concerning the limiting effects of his symptoms "not entirely credible." She cited four reasons. First, she disbelieved that Schrank could not remain awake during the day; medication and activity should be able to prevent him from falling asleep. Second, the ALJ found "incredible" Schrank's contention that he fell asleep while driving, given that he never had an accident and was able to retain his commercial driver's license. Third, she suspected that Schrank switched sleep specialists because his first specialist, Dr. Harden, refused to support his disability. Finally, she questioned the seriousness of Schrank's symptoms, given his inconsistent efforts with treatment and particularly his resistance to taking steps to successfully use a CPAP or BiPAP mask (i.e., finding a mask that fit and participating in desensitization therapy).

The district court upheld the ALJ's determination, concluding that the ALJ adequately justified her decision to discredit Schrank's testimony about the extent of his problems falling asleep.

On appeal, Schrank argues that the ALJ erred in two ways when she discredited his complaints about the limiting effects of his sleep apnea. First, the ALJ gave flawed reasons for disbelieving his testimony, in violation of the regulation that ALJs must make credibility determinations that are supported by evidence. *See* SSR 96-7p. He highlights, for instance, the ALJ's disbelief that he fell asleep while driving, though he testified to driving only short distances, and her comments about his disinterest in pursuing CPAP treatment, though his records show that he could not tolerate the mask.

But the ALJ's credibility determination was not "patently wrong," *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018), because she found Schrank not credible for several reasons that were adequately supported by the record. First, the ALJ explained that Schrank's testimony of his symptoms conflicted with others' descriptions: Schrank said he fell asleep in the middle of tasks like driving, but his doctor reported that he fell asleep while "in a quiet position and not doing much," and Schrank's father stated that Schrank does not "literally" fall asleep while driving. Further, the ALJ cited evidence that Schrank refused available measures to help patients overcome difficulty acclimating themselves to the CPAP machine, including desensitization therapy, fittings, and a new type of mask. Even if the ALJ's other reason for discounting

Schrank's testimony—that he was shopping around for doctors to support his disability application—was not substantiated by the record, we would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding, *see McKinzey v. Astrue*, 641 F.3d 884, 890–91 (7th Cir. 2011), as is the case here.

The ALJ's second error, Schrank argues, was ignoring parts of the record that support his allegations about falling asleep uncontrollably. According to Schrank, the ALJ did not mention key evidence—his father's testimony that Schrank once nodded off while changing the oil in a car, his counsel's testimony that Schrank fell asleep during their consultations, and his loss of two jobs because of episodes falling asleep on the job.

But Schrank misreads the ALJ's order. The ALJ considered the father's testimony but found it unhelpful because he retracted it when clarifying that Schrank had not "literally" fallen asleep while driving or changing the oil in a car. As for counsel's report that he saw Schrank fall asleep during consultations, the ALJ pointed out that a meeting in an attorney's office is just the sort of quiet, inactive environment that could be sleep inducing for Schrank. And the ALJ explained that she was unswayed by the fact of Schrank's job losses, given the absence of evidence why he lost his jobs or why he was precluded from all full-time work.

Finally, Schrank asserts that the ALJ failed to adhere to a host of the Appeals Council's directives on remand. To the extent he argues that the ALJ should have considered Schrank's subjective complaints about his sleepiness and the third-party testimony from his father, the ALJ did so. And to the extent he believes that the Appeals Council directed the ALJ to conclude, based on that evidence, that his allegations were credible, he is mistaken. The Appeals Council's remand order faulted the previous decisions for altogether failing to consider that evidence and directed the ALJ on remand to "evaluate" it. As described above, the ALJ did just that.

AFFIRMED