NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 15, 2020
Decided April 30, 2021

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-1840

| | |
|---|---|
| RENEE M. FAIR, <br> *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. |
| v. | No. 1:19-CV-152-JD |
| ANDREW M. SAUL, <br> Commissioner of Social Security, <br> *Defendant-Appellee.* | Jon E. DeGuilio, <br> *Chief Judge.* |

**ORDER**

Renee Fair applied for disability benefits based on conditions including back pain, a lumbar-spine impairment, and fibromyalgia. An administrative law judge concluded that Fair could still perform light work with limitations and denied her application. On appeal, Fair argues that the ALJ should have afforded controlling weight to her treating pain-management physician's opinion. Because the ALJ sufficiently articulated his reasons for discounting the opinion, we affirm.

**Background**

Fair applied for disability insurance benefits under Title II of the Social Security program in September 2012 at age 34, alleging disability as of July 30, 2012. She claimed that depression, anxiety, bipolar disorder, back pain, a lumbar-spine impairment, and fibromyalgia disabled her from work. Because this appeal concerns only the weight given to the opinion of Fair's treating pain specialist, Dr. Jeffrey Barr, we focus our discussion of the facts on Fair's physical conditions and impairments.

Four months before the onset of her alleged disability, Fair underwent surgery to decompress and fuse her lumbar spine. The surgery was meant to ameliorate her severe leg and back pain. But Fair's pain continued, and she was diagnosed with fibromyalgia, degenerative disk disease, lumbar radiculopathy (nerve pain in her low back), myofascial pain disorder (chronic muscular pain), and failed back surgery syndrome.

In February 2013, Fair began seeing Dr. Jeffrey Barr, a pain specialist at the same medical practice as her back surgeon. At her first visit, Fair complained of back pain aggravated by sitting or walking, but she reported that she could independently perform basic activities of daily life such as eating, bathing, and dressing. Dr. Barr noted that she suffered from "chronic low back pain secondary to lumbar failed back surgery syndrome" and prescribed OxyContin and Norco. At her next visit, Fair continued to report back pain but had a normal gait. One month later, Dr. Barr noted that OxyContin was helping Fair's chronic pain but that she had an antalgic gait.[1]  In May 2013, Dr. Barr noted that Fair's medications were "providing significant benefit," that her symptoms had "stabilized," and that she "had improvement with increased activity."

Also in May 2013, Fair received a functional capacity evaluation from a physical therapist who concluded that Fair could perform work at a "sedentary-light level." But later in 2013, Fair returned to work as a licensed practical nurse, where she engaged in "heavy lifting and bending." In December, she again visited the emergency room for back pain. A back x-ray revealed that her surgical hardware remained in place and that she had "mild" degeneration.

---

[1]  "A gait in which the patient experiences pain during the stance phase and thus remains on the painful leg for as short a time as possible." TABER'S MEDICAL DICTIONARY ONLINE, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/762890/all/antalgic%20gait#1 (last visited Dec. 21, 2020).

When Fair visited Dr. Barr again in January 2014, he noted that she was working part-time and had "significant pain" when she worked for two days consecutively. He recommended that Fair work every other day. Fair saw Dr. Barr, or a nurse practitioner, nine more times in 2014. She reported that OxyContin combined with Percocet or Norco helped alleviate her pain, and Dr. Barr continued to prescribe those medications. Dr. Barr's notes document that Fair had an antalgic gait at times and a normal gait at others. She consistently denied pain when asked to straighten and extend her legs, but she had limited spine extension with back pain. Fair also complained of fibromyalgia pain.

In 2015, Fair primarily complained to Dr. Barr of fibromyalgia pain. Dr. Barr continued to prescribe OxyContin as well as Norco or Percocet. His notes reflect that Fair's gait was normal on some days and antalgic on others, and that Fair had increased her physical activity.

In June 2015, Dr. Barr completed a questionnaire assessing the impact of Fair's conditions on her functioning. Dr. Barr noted that he had last examined Fair one month earlier. He stated that Fair's 2012 back x-ray supported his diagnoses of lumbar failed back surgery syndrome, lumbar degenerative disc disease, lumbar radiculitis, and fibromyalgia. Further, Fair was reportedly experiencing low-back and leg pain, aggravated by sitting for more than 30 minutes or standing for more than 5. Dr. Barr also explained that Fair reported the side effects of drowsiness, sedation, and lethargy from OxyContin and Norco. He opined that she could sit for four hours and stand or walk for two hours in an eight-hour workday but would require hourly unscheduled breaks to move around. Further, Fair's pain would interfere frequently with her attention and concentration and cause more than three absences per month. He opined that she "has significant pain symptoms that limit her function."

According to Dr. Barr's treatment notes, Fair's condition remained the same throughout 2016 and 2017. She complained of back and leg pain but reported that Oxycontin, Percocet or Norco, and Flexeril decreased that pain. She denied side effects from those medications.

Six other physicians assessed Fair's physical conditions and limitations in connection with her disability application. In January 2013, Dr. H.M. Bacchus examined Fair on behalf of the state agency and opined that "with continued pain management" she could "perform at least light duties, standing 3–4 hours in a 6–8 hour day, with occasional bending, squatting, and walking on uneven ground." In a short letter dated September 2016, Dr. James Ingram, Fair's family physician, opined that Fair was

disabled because of her fibromyalgia and back pain. One month later, Fair visited another family physician, Dr. Thomas Mason, for a second opinion on her disability. Dr. Mason examined Fair and wrote a letter recommending she be "strongly considered for disability" because of her chronic back pain, fibromyalgia, and bipolar disorder.

In 2017, internist Dr. John Mericle performed a consultative evaluation of Fair. He observed that she had a normal gait and could walk and squat without an assistive device but could not stand or walk for two hours in an eight-hour day. The same year, a state agency medical consultant reviewed Fair's medical records and concluded that she was limited to light work. On reconsideration, another reviewer affirmed that decision.

In May 2014, after a hearing, an ALJ found that Fair was not disabled. The Appeals Council reversed in August 2015 in part because the ALJ failed to weigh Dr. Barr's 2014 recommendation that Fair not work two days consecutively. After a second hearing, a new ALJ decided that Fair was not disabled in February 2016, and the Appeals Counsel denied review. Fair sought review from the district court, which remanded the decision because the ALJ had not given "good reasons" for discounting Dr. Barr's opinion. *See Fair v. Berryhill*, No. 1:17-cv-00099-TLS-SLC (N.D. Ind. April 17, 2018).

In 2018, a third ALJ conducted another hearing, at which Fair testified that she experienced pain in her back, hips, and legs. She explained that sitting for more than 20 minutes and walking or standing for more than 10 or 15 minutes caused back pain. She also left the house no more than three or four times a month and could not do chores other than loading the dishwasher or light dusting. She testified that she was spending most days sitting in a recliner with a heating pad and often needed a walker to move around.

After the hearing, the ALJ issued the decision under review, concluding that Fair was not disabled. Applying the standard five-step analysis, *see* 20 C.F.R. § 416.920(a)(4), he determined that Fair's severe impairments of degenerative disc disease, fibromyalgia, depression, and anxiety could reasonably be expected to cause her alleged symptoms. But Fair's "statements concerning the intensity, persistence and limiting effects of these symptoms" were inconsistent with the evidence.

In reaching his decision, the ALJ gave only "some weight" to Dr. Barr's opinion on Fair's limitations. He explained that Dr. Barr "likely possesses a strong longitudinal understanding of the impact of her symptoms on her functioning" as her treating physician. The "extent and severity of the limitations outlined" by Dr. Barr in his 2015

opinion, however, were "not well supported" because they were based on Fair's subjective statements and were inconsistent with his treatment notes.

But the ALJ gave "great weight" to the consultants' assessments from 2017. He also considered Fair's "longstanding complaints" of back pain and her limited ability to stand or walk. Based on these findings, he concluded that Fair could perform "light" work, *see* 20 C.F.R. § 404.1567(b), except that she could stand or walk for only four hours in an eight-hour workday and never crouch, crawl, or climb ladders, ropes, or scaffolds, and only occasionally balance, stoop, kneel, or climb ramps or stairs. He noted that this residual functional capacity finding was consistent with her 2013 functional capacity evaluation. Thus, although Fair could not perform her past work as a nurse, a phlebotomist, or a medical assistant, she could, in the opinion of a vocational expert aware of her limitations, work as an electrical assembler, small products assembler, or office helper.

The Appeals Council denied review, making the ALJ's ruling the final decision of the Commissioner. The district court concluded that substantial evidence supported the ALJ's decision and upheld the denial of benefits.

## Analysis

On appeal, Fair argues that the ALJ should have given controlling weight to Dr. Barr's opinion that Fair has work-preclusive physical limitations. Fair filed her claim before 2017, so her treating physician's opinion gets controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2). An ALJ "must offer good reasons" for giving a treating physician's opinion less than controlling weight. *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). If the ALJ considers the proper factors, though, we will uphold the decision to discount a treater's opinion "so long as the ALJ 'minimally articulate[d]' his reasons." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

Fair contends that the ALJ improperly doubted the extent of her limitations because only her subjective complaints supported Dr. Barr's opinion. She asserts that pain-management specialists must rely on "[c]areful listening" to evaluate a patient, and so Dr. Barr's reliance on subjective complaints is "not a valid factor" to consider in assigning weight to his opinion.

True, we have cautioned that an ALJ may not disregard a claimant's complaints of pain "solely because they lack objective corroboration." *See, e.g., Lambert v. Berryhill*, 896 F.3d 768, 778 (7th Cir. 2018). But an ALJ may discount a treating physician's opinion that is based on only the claimant's subjective complaints. *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013); *see also* 20 C.F.R. § 404.1527(c)(3). Dr. Barr's contemporary treatment notes do "not contain any notable clinical examination findings" supporting the substantial limitations included in his June 2015 assessment. Specifically, the May and July 2015 notes state only that Fair had an antalgic gait, while the September 2015 notes state that, although she had some tenderness in her back, Fair had a normal gait, a negative straight leg test, and intact sensation and motor function in her lower extremities. Dr. Barr also provided no other observations on Fair's "pain behaviors" and included only Fair's reports of pain. Similarly, in 2014, Dr. Barr's treatment notes demonstrate that he advised Fair not to work two consecutive days based only on her reports of pain when she did so.

Fair presses that her diagnosis of failed back surgery syndrome is itself objective evidence of her "substantial and persistent pain" and supports Dr. Barr's opinion. Although significant, a back injury alone does not prove disability. *See, e.g., Hall v. Berryhill*, 906 F.3d 640, 642, 645 (7th Cir. 2018) (affirming that claimant with back pain who had undergone back surgery was not disabled). Nor does it provide evidence of the specific limitations included in Dr. Barr's 2014 and 2015 assessments, such as how long Fair could sit, stand, walk, or concentrate on a task.

Further, Fair does not engage with the ALJ's additional rationale that Dr. Barr's own records did not support his conclusions. *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (finding that ALJ "properly discounted" treating physician's opinion "due to lack of consistency"); 20 C.F.R. § 404.1527(c)(4). For example, the ALJ explained, Dr. Barr stated in his June 2015 disability assessment that Fair experienced side effects from OxyContin and Norco. But none of Dr. Barr's other treatment notes document that Fair experienced side effects from those medications. Instead, they show that Fair consistently denied side effects from OxyContin and Norco.

Fair's remaining arguments also fall short. She contends that the ALJ failed to consider the waxing and waning nature of pain. But the ALJ expressly considered her pain's fluctuating nature in his assessment of both Dr. Barr's opinion and Fair's residual functional capacity. Fair also faults the ALJ for discounting Dr. Barr's opinion because it "did not track" the opinions of non-treating physicians. But an ALJ properly considers all the evidence, including the opinions of other physicians, to determine whether a treating physician's opinion is supported by the record. *See Stepp v. Colvin*, 795 F.3d 711,

719 (7th Cir. 2015) (upholding rejection of treating physician's opinion because of inconsistency with opinions of other physicians); *see also* 20 C.F.R. § 404.1527(c)(3).

Overall, the ALJ adequately articulated his reasons for discounting Dr. Barr's opinion. The ALJ discussed the nature and extent of Fair's relationship with Dr. Barr. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); 20 C.F.R. § 404.1527(c)(2)–(5). Namely, he recognized that Dr. Barr was her "long-time treating physician" and "likely possesses a strong longitudinal understanding of the impact of her symptoms on her functioning." And he noted each of Fair's visits with Dr. Barr and relevant treatment notes. But, he explained, Dr. Barr's opinion was entitled to only "some weight" because it was contradicted by other evidence and unsupported by objective tests. The record supports these conclusions, so the ALJ provided "'an accurate and logical bridge' between the evidence and [his] decision" to discount Dr. Barr's opinion. *See Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020) (quoting *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)).

                                                                          AFFIRMED